```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JUAN CARLOS RODRIGUEZ-FRANCISCO,    :
                Petitioner,    :
                         :        **OPINION AND ORDER**
  v.    :
                         :        15 CV 8843 (VB)
UNITED STATES OF AMERICA,    :        13 CR 233 (VB)
                Respondent.    :
--------------------------------------------------------x

Briccetti, J.:

    Petitioner Juan Carlos Rodriguez-Francisco, proceeding pro se, moves under 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence, and requests that the Court appoint counsel

pursuant to 18 U.S.C. § 3006A(a)(2)(B) and conduct a hearing.[1]  Petitioner asserts he was denied

the effective assistance of counsel for the following reasons:

    1.  His attorney allegedly failed to file a notice of appeal on petitioner's behalf after

petitioner requested that he do so, and allegedly informed petitioner that petitioner could not

appeal;

    2.  His attorney allegedly incorrectly informed petitioner that a jury could convict him of

conspiring to distribute heroin based on evidence that he did so prior to March 5, 2013, when the

indictment charged that the offense was committed "from at least on or about March 5, 2013

through on or about March 12, 2013"; and

    3.  His attorney allegedly incorrectly informed petitioner he could be convicted under 18

U.S.C. § 924(c) based on evidence that firearms were present in the apartment in which

petitioner was arrested.

------------------------------

[1]    Certain documents filed in response to the instant petition appear on the docket for 15 CV
8843, whereas others appear on the docket for 13 CR 233.  The Court will refer to a document by
the number listed on 13 CR 233 only when that document is not listed on 15 CV 8843.

Copies Mailed/Faxed
Chambers of Vincent L. Briccetti

Petitioner also asserts in a letter motion to amend his original motion that the change of law announced in <u>Johnson v. United States</u>, 135 S.Ct. 2551 (2015), renders his conviction under 18 U.S.C. § 924(c) unconstitutional.  (15 CV 8843, Doc. #13).

For the following reasons, the motion is DENIED in its entirety and the petition is dismissed.

## BACKGROUND

The motion, defense counsel's affidavit, the government's papers in opposition and exhibits attached thereto, petitioner's reply to the government's submission and the affirmation attached thereto, and the record of the underlying criminal proceedings, reflect the following:

On or about February 20, 2013, Drug Enforcement Administration ("DEA") agents investigating a suspected drug distribution operation installed a camera in the hallway of an apartment building at 1463 Midland Avenue, in Yonkers, New York.  On March 12, 2013, the camera captured Spring Rios, petitioner's co-defendant, leaving an apartment in the building (the "Apartment") carrying a large, gift-wrapped box.  Rios placed this box in a car and drove away. Shortly thereafter, a Yonkers police officer stopped Rios's car, and Rios consented to a search of the vehicle and the gift-wrapped box.  Upon searching the box, law enforcement officers found a computer tower case containing vacuum-sealed bags holding approximately $140,000 in United States currency.

Later that day, DEA agents arrested petitioner in the Apartment, and a Magistrate Judge issued a warrant to search the Apartment.  In the Apartment, agents found several firearms and accessories, including a "loaded AK-47 style rifle," a loaded pistol, a shotgun, "a gun that appears to be designed to launch projectiles," "a gun sound suppressor (or silencer)," several high-capacity clips and magazines, and hundreds of rounds of ammunition.  (13 CR 233, Doc.

2

#57).  The agents also found four Ziploc bags containing trace quantities of heroin, thousands of glassine envelopes and rubber bands, heat sealers, grinders containing heroin residue, $232,000 in United States currency, and a ledger notebook containing records of drug transactions.

On March 28, 2013, petitioner was indicted for conspiring to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a), and 841(b)(1)(A), and for possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The indictment alleges petitioner committed these acts from "at least on or about March 5, 2013 through on or about March 12, 2013."  (13 CR 233, Doc. #9).

On October 22, 2013, after having initially been represented by another attorney, petitioner retained Angelo G. MacDonald, Esq., as his attorney.  Discovery was provided, and motions to suppress and for other relief were submitted by petitioner and decided by the Court. The parties entered into a plea agreement, and on April 2, 2014, petitioner pleaded guilty to both counts of the indictment.

At the plea hearing, petitioner confirmed under oath, among other things, that he (i) understood the proceedings; (ii) had enough time to discuss the case with his attorney, including the consequences of his guilty plea; (iii) was satisfied with his attorney's representation; (iv) understood the constitutional rights he was waiving as part of his guilty plea; (v) understood if he went to trial, the government would be required to prove each essential element of the charged crimes beyond a reasonable doubt; (vi) understood the charges, as well as the mandatory minimum and the possible maximum punishments he faced; (vii) understood no one could predict what his sentence would be; and (viii) read, discussed with his attorney, and understood the written plea agreement, which, among other things, included a waiver of petitioner's right to appeal or otherwise challenge his sentence as long as the sentence imposed did not exceed 181

months' imprisonment. Petitioner also admitted that the prosecutor's detailed proffer of what the government intended to prove at trial was substantially accurate; that he had agreed with others between March 5 and March 12, 2013, to distribute and possess with intent to distribute more than a kilogram of heroin; and that he possessed firearms in furtherance of that conspiracy. The Court found petitioner was competent to plead guilty, his guilty plea was knowing and voluntary, and there was an adequate factual basis for the guilty plea.

At sentencing on November 21, 2014, the Court adopted the guidelines range agreed to in the plea agreement and set forth in the presentence report (180 to 181 months' imprisonment), and carefully evaluated all of the sentencing factors in 18 U.S.C. § 3553(a). The Court then sentenced petitioner to the bottom of the range—180 months' imprisonment—to be followed by five years of supervised release.[2]

The Court also specifically advised petitioner of his appellate rights. In particular, the Court noted that to appeal, subject to any limitation on his right to appeal contained in his plea agreement, petitioner had to request that either his attorney or the court clerk prepare and file a notice of appeal within fourteen days after entry of judgment.

Judgment was entered November 25, 2014. No notice of appeal was ever filed.

After petitioner filed his Section 2255 motion on November 4, 2015, Mr. MacDonald submitted an affidavit regarding his representation of petitioner during the criminal case. Mr. MacDonald states he prepared the affidavit through his own recollection, and by reviewing petitioner's affidavit and "the case itself." (13 CR 233, Doc. #55).

---

[2]      The mandatory minimum sentence on the heroin conspiracy count was 120 months' imprisonment. The mandatory minimum sentence on the firearms count was 60 months' imprisonment, which, by law, had to be imposed to run consecutively to the sentence on the conspiracy count.

Regarding the guilty plea, Mr. MacDonald states he reviewed the entire plea agreement with petitioner and answered all of petitioner's questions regarding the agreement.  Mr. MacDonald also states that petitioner had "a very good command of the evidence, the discovery, the criminal allegations and charges, the applicable law and ultimately, exhibited an understanding of all of the aspects of the plea agreement."  Mr. MacDonald says he advised petitioner to plead guilty, in part because doing so "eliminated the certainty of a super[s]eding indictment that would have alleged a more time-extensive conspiracy and a greater amount of drugs possessed with intent to distribute," thereby exposing petitioner to a more severe sentence. (Id.).

Regarding petitioner's waiver of his right to appeal, Mr. MacDonald states he explained the waiver to petitioner prior to the guilty plea, and petitioner agreed to waive his right to appeal any sentence imposed within the sentencing guidelines range.  Moreover, immediately after the Court sentenced petitioner, Mr. MacDonald states he met with petitioner in the courthouse holding cells, where they discussed petitioner's right to appeal as limited by the appeal waiver in the plea agreement.[3]  Mr. MacDonald states he did not tell petitioner that he could not file an appeal.  Mr. MacDonald also states that petitioner did not ask Mr. MacDonald to file a notice of appeal at that time.  (Id.).

Mr. MacDonald further states that throughout petitioner's case, petitioner instructed Mr. MacDonald to discuss the case with two of petitioner's friends with whom petitioner maintained

---

[3]     The Court discounts the affirmation submitted by petitioner's fellow prisoner that he does not recall petitioner being removed from a holding cell to meet with Mr. MacDonald following petitioner's sentencing.  (15 CV 8843, Docs. ##11, 12).  What Mr. MacDonald says he told petitioner regarding his right to appeal at that time is consistent with (i) what the Court told petitioner about his right to appeal, and (ii) the appeal waiver provision of the plea agreement, which, at the time of the guilty plea, petitioner acknowledged reading and understanding.  In any event, as discussed below, the Court finds Mr. MacDonald's affidavit to be credible.

frequent contact, and that Mr. MacDonald had numerous discussions with the two friends during

the course of the case.  Sometime after sentencing, one of these friends relayed a request from

petitioner to Mr. MacDonald that Mr. McDonald should "[look] into filing a Notice of Appeal."

Accordingly, in early December 2014, Mr. MacDonald went to the court clerk's office, and two

clerks informed him that petitioner was required to pay a filing fee of $505.00 to file a notice of

appeal.  Mr. MacDonald relayed this information by text message to one of the friends, and by

telephone to the other friend.  Mr. MacDonald also informed the first friend that petitioner could

"write to the Court and try to file the Notice of Appeal as a 'poor person.'"  Although Mr.

MacDonald was told by petitioner's friends that they would get back to him, neither petitioner

nor his friends provided Mr. MacDonald with the filing fee or specifically instructed Mr.

MacDonald to file a notice of appeal.  (Id.).

## DISCUSSION

Although a waiver of the right to collaterally challenge a conviction is generally

enforceable in this circuit, such waivers do not prevent petitioner from claiming on a habeas

corpus petition that the waiver was the "product of counsel's ineffective assistance."  Saleh v.

United States, 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016).[4]  However, courts disagree

about the extent to which these waivers prevent a habeas petitioner from arguing that aspects of a

plea agreement other than the waiver were the product of counsel's ineffective assistance.

Compare id. at *6 (finding the waiver did not prevent petitioner from raising an ineffective

assistance of counsel claim because counsel coerced his client into pleading guilty with the

promise of a short sentence), with Sinclair v. United States, 2013 WL 3716898, at *2 (S.D.N.Y.

July 16, 2013) (finding the waiver prevented petitioner from raising an ineffective assistance of

---

[4]      Petitioner will be provided with copies of all unpublished opinions cited in this decision.
See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

6

counsel claim with respect to parts of the plea agreement other than the waiver).  Thus, it is not clear whether this Court should reject petitioner's claims based solely on petitioner's waiver of collateral review.

Nevertheless, for the following reasons, none of petitioner's claimed grounds for relief has merit.  Thus, the petition must be denied regardless of whether petitioner's waiver forecloses review of these claims.

I.    Counsel's Purported Failure to Appeal on Petitioner's Behalf

Petitioner claims Mr. MacDonald failed to appeal after petitioner specifically instructed him to do so, and trial counsel incorrectly told petitioner he could not file an appeal due to the waiver.  When a criminal defendant's attorney fails to file an appeal after the defendant tells him to do so, the defendant is entitled to a new appeal notwithstanding that the defendant has not shown any likelihood of success on appeal and has waived his right to appeal and collaterally attack his conviction.  Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006).  Of course, petitioner must first demonstrate he actually instructed his attorney to appeal.  Lopez v. United States, 2006 WL 2020389, at *3 (S.D.N.Y. July 12, 2006).

For the following reasons, this Court finds petitioner has failed to show he actually requested counsel to file an appeal.  This claim is therefore denied.

"When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing."  Berrios v. United States, 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) (citations omitted).  In his affidavit, Mr. MacDonald asserts he informed petitioner of petitioner's right to appeal as limited by the waiver, and never told petitioner that petitioner could not file an appeal.  Mr. MacDonald further states petitioner never specifically instructed

Mr. MacDonald to file a notice of appeal.  Moreover, after Mr. MacDonald informed petitioner's

friends of the filing fee, Mr. MacDonald never received payment for the fee or further

instructions to file a notice of appeal.  These credible assertions in petitioner's attorney's sworn

statement undermine petitioner's self-serving claim that he told Mr. MacDonald to file a notice

of appeal.

Mr. MacDonald's credible assertions in this regard are corroborated by the fact that

petitioner did not complain about his attorney's alleged failure to file an appeal until petitioner

filed the instant motion in November 2015—nearly one year after petitioner was sentenced and

explicitly informed by the Court of his right to appeal.  This lengthy delay supports the

conclusion that petitioner never actually requested that counsel file an appeal.  See Roberts v.

United States, 2014 WL 4199691, at *5 (E.D.N.Y. Aug. 22, 2014) (dismissing claim that

attorney failed to file appeal after being requested to do so when petitioner waited thirteen

months to raise the issue); Colon v. United States, 2010 WL 1644260, at *6 (S.D.N.Y. April 21,

2010) (dismissing same claim after petitioner waited eleven months to file petition).

Based on the above, there is no reason to hold any further hearing to determine whether

petitioner in fact instructed Mr. MacDonald to appeal.  In light of this Court's intimate

familiarity with the underlying criminal proceedings, petitioner's delay in filing the instant

motion, and the fact that petitioner's "highly self-serving and improbable assertions" are

contradicted by Mr. MacDonald's detailed and credible affidavit and the record of the sentencing

proceeding, no purpose would be served by expanding the record.  Chang v. United States, 250

F.3d 79, 86 (2d Cir. 2001); see Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011).

8

II.     Counsel's Purportedly Incorrect Advice that Petitioner Could Be Convicted and
        Sentenced Based on Conduct Occurring Outside the Date Range Alleged in the
        Indictment

        Petitioner asserts Mr. MacDonald incorrectly informed him that he could be convicted of

the narcotics conspiracy and sentenced to the mandatory minimum of ten years' imprisonment

based on evidence that he conspired to possess or distribute heroin prior to the date range alleged

in the indictment.  Petitioner argues this advice was contrary to United States v. Darmand, 3 F.3d

1578, 1581 (2d Cir. 1993), which held that when determining whether to apply a mandatory

minimum sentence, a district court should consider "only [] the conduct which actually resulted

in a conviction under the statute."  Petitioner further argues he would have proceeded to trial but

for this incorrect advice.

        This argument is without merit.

        First, petitioner has not demonstrated that his attorney's advice actually prejudiced him,

as he is required to do under the second prong of the familiar ineffectiveness of counsel standard

announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  To establish prejudice,

petitioner must show "a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."  United States v. Hernandez, 242 F.3d

110, 112 (2d Cir. 2001).  In denying a habeas petition, a district court is entitled to rely on sworn

statements made by the petitioner in open court that contradict petitioner's allegations in his

habeas petition.  Id.

        Here, petitioner's claim in the instant 2255 motion that he did not conspire to distribute or

possess with intent to distribute heroin between the March 5 and March 12, 2013, is undermined

by his own sworn statement to the contrary during his April 2, 2014, plea hearing, when he

unequivocally admitted in open court that he agreed with others to distribute more than a

9

kilogram of heroin between March 5 and March 12, 2013.  Insofar as this sworn statement discredits the defense petitioner planned to present at trial—namely, that he did distribute heroin, but not between March 5 and March 12, 2013—it also undermines petitioner's assertion that he would have proceeded to trial but for his attorney's advice.  Thus, petitioner cannot establish a reasonable probability that but for counsel's advice, petitioner would have proceeded to trial.

Moreover, "counsel's representations [did not fall] below an objective standard of reasonableness," United States v. Hernandez, 242 F.3d at 112, as is required to satisfy the first Strickland prong.  Mr. MacDonald and the government both assert that the government planned to seek a superseding indictment that would have extended the time frame of the conspiracy to an earlier date, and included a greater alleged quantity of drugs.  Under such an indictment, petitioner could have been convicted at trial of conspiring to distribute and possess with intent to distribute heroin based on evidence that petitioner did so at any point during the broader date range, even if the conduct preceded the date range alleged in the original indictment.  Thus, Mr. MacDonald's advice was correct and not substandard.

III.   Counsel's Purportedly Incorrect Advice that Petitioner Could Be Convicted of Possessing a Firearm in Furtherance of a Drug Trafficking Crime Based on the Mere Presence of Firearms in the Apartment

Petitioner argues Mr. MacDonald incorrectly informed him that he could be convicted of possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), based on evidence establishing the presence of firearms at the residence in which he was arrested.  Petitioner asserts counsel's advice was legally incorrect because the "mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime."  United States v. Snow, 462 F.3d 55, 62 (2d Cir. 2006).

10

Counsel's advice was not objectively unreasonable.  Thus, this claim is denied.

Although the government must demonstrate a "'nexus' between the charged firearm and the charged drug selling operation," United States v. Snow, 462 F.3d at 62, the evidence in this case was undoubtedly sufficient to establish this nexus.  In Snow, the Second Circuit noted, "to determine whether a nexus exists, the ultimate question is whether the firearm 'afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.'"  462 F.3d at 62 (citing U.S. v. Lewter, 402 F.3d 319, 322 (2d Cir. 2005)).  The Second Circuit considered several factors relevant to the nexus inquiry, including the "accessibility of the firearm," the proximity of the firearm to "drugs or drug profits," "the type of weapon," and "whether the gun is loaded."  United States v. Snow, 462 F.3d at 62 n.6 (citing Ceballos-Torres, 218 F.3d 409, 414–15 (5th Cir. 2000)).  Accordingly, the Second Circuit found a "nexus" between the charged firearms and the charged drug selling operation on the basis that loaded handguns were found in close proximity to drug packaging paraphernalia, trace amounts of cocaine, and cash proceeds from drug transactions.  United States v. Snow, 462 F.3d at 62–63.

Here, multiple firearms and firearms accessories, as well as hundreds of rounds of ammunition, were found in the same residence as drug paraphernalia, including Ziploc bags and grinders containing trace amounts of heroin, thousands of glassine envelopes and small rubber bands, heat sealers, $232,000 in United States currency, and a notebook containing records of drug transactions.  At least two of the firearms were loaded, and "one handgun was found in a dresser in the bedroom where heroin also was found." (13 CR 233, Doc. #56-2).  Moreover, based on the types of firearms and accessories recovered, including an AK-47 and a silencer, it is unlikely that the firearms were intended to be used in a lawful manner, such as target shooting or self-defense.  Under these circumstances, there was undoubtedly sufficient evidence to establish

Case 7:13-cr-00233-VB   Document 66   Filed 12/02/16   Page 12 of 14

that the recovered firearms provided, at the least, a potential advantage relevant to drug

trafficking.  Counsel's performance was therefore adequate because he was correct that

petitioner could be convicted under 18 U.S.C. § 924(c) based on the evidence found in the

Apartment.

IV.    Constitutionality of Petitioner's 924(c) Conviction in Light of Johnson v. United States

Petitioner also contends he is entitled to habeas relief under Johnson v. United States, 135

S.Ct. 2551, 2557 (2015), which held the residual clause of the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e)(1), unconstitutionally vague.  That clause defines a "violent

felony" as a felony that "otherwise involves conduct that presents a serious potential risk of

physical injury to another."  Petitioner argues that 18 U.S.C. § 924(c), under which petitioner

was convicted in this case, imposes penalties for possessing a firearm in furtherance of, inter alia,

a "crime of violence," which is partially defined through a residual clause contained in Section

924(c)(3)(B).[5]  Petitioner asserts that just as the residual clause's definition of "violent felony" in

the ACCA was unconstitutionally vague, Section 924(c) is unconstitutionally vague as well due

to its use of a residual clause to define a "crime of violence."

Petitioner's argument is meritless.  Petitioner's conviction was not based on the residual

clauses of either Section 924(e)(1) or Section 924(c)(3)(B).  Nor was petitioner's conviction

based on the "crime of violence" clause in Section 924(c).  Instead, petitioner was convicted

under the clause of the statute imposing a mandatory minimum sentence for using or carrying a

firearm in furtherance of a drug trafficking crime.  Johnson did not address this portion of the

---

[5]    The residual clause in § 924(c)(3)(B) provides that a "crime of violence" includes a
felony "that by its nature, involves a substantial risk that physical force against the person or
property of another may be used in the course of committing the offense."

12

statute or any language similar to it, and petitioner does not even argue this particular clause of the statute is unconstitutionally vague. <u>Johnson</u> therefore has no impact on this case.

V.     <u>Appointment of Counsel</u>

      Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel to a petitioner seeking relief under 28 U.S.C. § 2255 if the interests of justice so require.  "In determining whether to grant discretionary appointment of counsel, courts in this circuit have looked to such factors as the petitioner's likelihood of success on the merits, the complexity of the legal issues raised by the petition, and the petitioner's ability to investigate and present the case." <u>Gonzalez v. New York</u>, 2006 WL 728482, at *1 (S.D.N.Y. Mar. 21, 2006) (internal quotation marks and citation omitted).

      As set forth above, none of petitioner's claims is complex or likely to succeed on the merits.  Moreover, petitioner's thorough and well-articulated filings belie the notion that petitioner lacks the ability to present his case.  Petitioner's request for the appointment of counsel is therefore denied.

## CONCLUSION

Petitioner's motion under 28 U.S.C. § 2255 is DENIED and the petition is dismissed.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the open motions in 13 CR 233 (Docs. ##45, 46, 55, and 65) and is further instructed to close case 15 CV 8843.

Dated: December 1, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge